<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ROBERTO A. ISAAC | |
| Plaintiff, | Civ. No. 10-6198 (DRD) |
| v. | **O P I N I O N** |
| CITY OF BAYONNE, et al. | |
| Defendants. | |

*Appearances by:*

Roberto A. Isaac
#239567
CENTRAL RECEPTION & ASSIGNMENT
688102-W-2-A
P.O. BOX 7450
West Trenton, New Jersey 08628

   *Pro Se Plaintiff,*

CHARLES M. D'AMICO
CORPORATION COUNSEL
CITY OF BAYONNE—LAW DIVISION
By: Susan Ferraro, Esq.
630 Avenue C
Bayonne, New Jersey 07002

   *Attorneys for Defendants City of Bayonne, Matthew McGillis, and Augstin Caamano.*

**DEBEVOISE, Senior District Judge**

This matter arises out of the arrest and detention of Plaintiff Roberto Isaac. While high on PCP and driving a stolen taxicab, Mr. Isaac caused a motor vehicle accident in the course of fleeing police officers. On November 29, 2010, Mr. Isaac filed a pro se Civil Rights Complaint against the Bayonne Police Department, asserting claims under 42 U.S.C. § 1983 and the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. On March 3, 2011, Mr. Isaac filed an Amended Complaint adding Defendants Sheriff Brandon Fitzgibbons, Hudson County Sheriff's Department, Hudson County Sheriff's Office County of Hudson, City of Bayonne, Matthew McGillis, Augustin Caamano, and S.O.J. Steneck[1], and claims under 42 U.S.C. §§ 1985(3) and 1988, for violations of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, unspecified claims under the New Jersey Constitution, and common law battery. The Amended Complaint seeks a jury trial, $250,000 in compensatory damages and $100,000 in punitive damages, costs, and attorney's fees.

The City of Bayonne, Officer McGillis, and Officer Caamano (the "City Defendants") now move for Summary Judgment against Mr. Isaac on all of his claims. For the reasons set forth below, Defendants' motion is GRANTED.

## I. BACKGROUND

On September 13, 2010, Officer Caamano received a radio transmission that Officer Joseph Steneck of the Hudson County Sheriff's Office, who was off-duty at the time, was following a yellow taxicab traveling north on State Route 440. Officer Steneck "relayed to dispatch that the cab was involved in an earlier incident in Jersey City and may have been

---

[1] Mr. Isaac added additional Defendants that were terminated pursuant to a Consent Order, dated on May 3, 2012. The Bayonne Police Department was terminated as a Defendant February 15, 2012 pursuant to a 28 U.S.C. §§ 1915(e) and 1915A screening order.

2

reported stolen." (Ferraro Cert., Ex. A.)  Officer Caamano approached Route 440 from East 30th Street and saw a yellow cab approaching the intersection from the south.  Consequently, he activated his emergency lights and entered the intersection, at which point Mr. Isaac pulled the cab over to the right side of the road.  Officer Caamano then placed his vehicle at an angle in front of the cab.

While Officer Caamano was exiting his vehicle, Officers Steneck and McGillis approached the cab on foot.  Mr. Isaac put the vehicle into reverse and struck Officer Steneck.  He then put the vehicle into drive and struck the front passenger's side of Mr. Caamano's car, pushing it parallel with the highway.  Mr. Isaac made a U-Turn and accelerated in the direction of Officers Steneck and McGillis.  Consequently, Officer McGillis fired two rounds at Mr. Isaac that shattered the cab's driver's side window and cracked the windshield.

Mr. Isaac then steered the cab away from the officers and fled the scene southbound on Route 440.  Officers Caamano and McGillis chased after Mr. Isaac in their respective police vehicles.  Shortly thereafter, Mr. Isaac lost control of the cab resulting in a one-car collision, causing the cab to flip over and rendering Mr. Isaac unconscious.

Officer McGillis approached the overturned cab on foot and discovered that Mr. Isaac was trapped in the cab, but was breathing and had a pulse.  Officer Caamano notified dispatch that he required an ambulance and the fire department.  Officers McGillis and Steneck then secured Mr. Isaac's hands until he could be safely taken out of the overturned cab.

Shortly thereafter, Mr. Isaac was extricated from the vehicle by the Port Authority ESU unit and taken in an ambulance to Jersey City Medical Center, accompanied by Officers Popowski and Smentkowski.  While en route to the hospital, Officer Popowski noticed a strong

ether smell emanating from Mr. Isaac, and believed he may have been under the influence of PCP.

Mr. Isaac was treated for minor injuries to his face and head as a result of the collision. He also admitted to Jersey City Medical Center personnel that he had smoked PCP that evening. The following morning, at approximately 12:15am, Mr. Isaac was transported to the Bayonne Police Department by a number of officers without incident.  At 4:15am, Mr. Isaac complained of headaches and diabetes, at which point he was transported to Bayonne Medical Center.  Mr. Isaac was treated and taken back to his cell at the Bayonne Police Department at approximately 5:54am.

Mr. Isaac was charged with two counts of attempted murder, two counts of aggravated assault, possession of a weapon with intent to use it for an unlawful purpose, theft, fleeing and eluding, driving under the influence within 1,000 feet of a school zone, driving while suspended, failure to wear a seatbelt, reckless driving, improper U-Turn, and driving the wrong way on a one-way street.  Mr. Isaac pleaded guilty, pre-indictment, to one count of aggravated assault, and one count of eluding/resisting arrest, and was sentenced to six years in prison.

## II.  DISCUSSION

The City Defendants now move for summary judgment against Mr. Isaac on all of his claims.  In doing so, they argue that (1) no reasonable fact finder could conclude that Officers McGillis or Caamano used excessive force against Mr. Isaac; (2) there is no evidence of any policy or custom maintained by the Bayonne Police Department or City of Bayonne that violates constitutional rights; (3) Mr. Isaac's state law tort claims are barred under the New Jersey Tort Claims Act; (4) Mr. Isaac offers no evidence to support his claims under the New Jersey Constitution, 42 U.S.C. §§ 1985(3), and 1988.  Mr. Isaac has not opposed the motion.

A.     **Standard of Review**

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). For an issue to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006). For a fact to be material, it must have the ability to "affect the outcome of the suit under governing law." Id. Disputes over irrelevant or unnecessary facts will not preclude granting summary judgment.

The party moving for summary judgment has the burden of showing that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party does not bear the burden of proof at trial, it may discharge its burden under the summary judgment standard by showing that there is an absence of evidence to support the non-moving party's case. Id. at 325. If the moving party can make such a showing, then the burden shifts to the non-moving party to present evidence that a genuine factual dispute exists and a trial is necessary. Id. at 324. In meeting its burden, the non-moving party must offer specific facts that establish a material dispute, not simply create "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In deciding whether a dispute of material fact exists, the Court must consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995). The Court's function, however, is not to weigh the evidence and rule on the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If there are no issues that require a trial, then judgment as a matter of law is appropriate. Id. at 251-52.

B.   Mr. Isaac's Claims

Mr. Isaac's claims against the City Defendants are premised on allegations of cruel and unusual punishment and unreasonable use of force.[2]  In support of his claim for unreasonable use of force, the Mr. Isaac alleges that, on September 13, 2010, he was stopped on Route 440 by police officers, at which point one of the officers fired shots into the car he was driving for no reason, dragged him from the vehicle, and began punching, kicking, and choking him until he passed out.  Mr. Isaac further alleges that, while removing him from his holding cell to process him, police officers "continued to apply excessive force by placing him in choke hold type restraints."  (Amend. Compl. ¶ 31.)

The record, however, wholly contradicts these allegations.  It clearly indicates that (1) Mr. Isaac sustained injuries as a result of a high-speed automobile collision that caused the vehicle he was driving while high on PCP to flip over; (2) Mr. Isaac had to be extricated from the vehicle by the Port Authority ESU; (3) Mr. Isaac pleaded guilty to aggravated assault and resisting arrest/eluding; and (4) Officers McGillis and Caamano had no contact with Mr. Isaac after he was taken from the crash scene in an ambulance.

 Consequently, no reasonable juror could believe Mr. Isaac's version of events, and his claim for excessive force against the City Defendants is dismissed.[3]  See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly

---

[2] To be sure, Mr. Isaac asserts claims under the Sixth and Fourteenth Amendments that have nothing to do with allegations of excessive force or cruel and unusual punishment. However, Mr. Isaac fails to set forth any allegations that could potentially support a Sixth or Fourteenth Amendment claim.  Thus, those claims are dismissed.

[3] In addition Mr. Isaac's conspiracy claim against the City Defendants under 42 U.S.C. §§ 1985(3) must be dismissed as it is premised on Defendants' "acting in concert to use excessive force and physical abuse of Plaintiff."  (Amend. Compl. ¶ 40.)

6

contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Mr. Isaac's claim of cruel and unusual punishment also merits dismissal. In support of that claim, Mr. Isaac alleges that, while at the Bayonne Police Department, he was put "into a holding cell with no shoes on his feet, no blanket, no mattress, and no food or water through 24 hours of processing until early afternoon the next day." (Amend. Compl. ¶ 30.)

A claim based on allegations of cruel and unusual punishment are governed by the Eighth Amendment[4], which draws constitutional boundaries on the conditions of imprisonment. "Not every governmental action affecting the interests or well-being of a prisoner" rises to a constitutional level. Whitley v. Albers, 475 U.S. 312, 319 (1986). "[O]nly the unnecessary and wanton infliction of pain" is subject to Eighth Amendment scrutiny. Id.

To show an Eighth Amendment violation by a prison official, a plaintiff must meet two requirements. First, the plaintiff must show that the official's conduct is "objectively, sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Such conduct must violate contemporary standards of decency. Hudson v. McMillan, 503 U.S. 1, 8 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981)). Indeed, it "must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834. Second, the plaintiff must show that the official had "sufficiently culpable state of mind." Id. Specifically, the Court must determine if the prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847.

To be sure, the failure to provide a prisoner with food, water, and a mattress may amount to an Eighth Amendment violation, but not in this case. Here, the record shows that Mr. Isaac

---

[4] To the extent Mr. Isaac states a claim for cruel and unusual punishment under the New Jersey Constitution, such a claim is analyzed according to federal Eighth Amendment law. See Jumpp v. Power, No. 08-4268, WL 1704307, at *4 (D.N.J. June 18, 2009) (collecting cases).

was put into a cell at the Bayonne Police Department at 12:15am.  Then, at 4:15am, he complained of headache and diabetes and was transported to the Bayonne Medical Center for treatment.  Mr. Isaac was returned to his cell at 5:45am and remained there until 10:11am, when he was transported to Hudson County Central Judicial Processing Court.  In short, remaining in temporary police custody overnight for ten hours before processing without a meal or a bed does not violate contemporary standards of decency.

  Moreover, there is no evidence, nor does Mr. Isaac allege, that he asked for food, water, or a mattress, and that police officers refused to provide him with any of those items.  This, coupled with the fact that police officers took him to the hospital in the middle of the night when he complained of ailments, strongly suggests that the police officers watching Mr. Isaac did not disregard any substantial risk of serious harm to him.  To the contrary, they were responsive to such risk.  Consequently, Mr. Isaac's claim for cruel and unusual punishment is dismissed.

### III.  CONCLUSION

  For the foregoing reasons, the City Defendants' Motion for Summary Judgment is GRANTED.  Mr. Isaac's claims against the City Defendants are dismissed with prejudice.

  The Court will enter an order implementing this opinion.

                **/s/ Dickinson R. Debevoise**
              DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: December 19, 2012